66            December 14, 2012            No. 9

## IN THE OREGON TAX COURT
## REGULAR DIVISION

MULTNOMAH COUNTY ASSESSOR,
*Plaintiff,*

*v.*

PORTLAND DEVELOPMENT COMMISSION,
*Defendant.*

(TC 5008)

Plaintiff (the county) appealed from a Magistrate Division decision as to the exemption status of Defendant (taxpayer)'s property for the 2009-10 tax year. Taxpayer argued that its property should be exempt from taxation because provision of housing to low income occupants was involved in taxpayer's activities. Granting the county's motion, the court ruled that pursuant to the definitions in the statute, taxpayer was not the type of entity described in the statute, that is, a housing authority, and therefore the property in question was not exempt from taxation.

Oral argument on cross-motions for summary judgment was held June 13, 2012, in the Multnomah County Courthouse, Portland.

John S. Thomas, Multnomah County Counsel, Portland, filed the motion and argued the cause for Plaintiff (the county).

Jack L. Orchard, Ball Janik LLP, Portland, filed the cross-motion and argued the cause for Defendant (taxpayer).

Decision for Plaintiff rendered December 14, 2012.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This matter is before the court on a second set of cross-motions for summary judgment. In these motions the parties present their differing views as to whether the property in question is exempt from property taxation under Oregon statutes. There is no disagreement about the underlying facts of the case and they are found in a document entitled Agreed Facts as of January 1, 2009 (the Agreed Facts), filed with the court on May 30, 2012.

## II.  FACTS

The Agreed Facts establish the following:

(1)    The Fairfield is an 82-unit single room occupancy (SRO) rental housing facility consisting of 27,866 square feet of building area located at 1103-1121 SW Stark Avenue in Portland, Oregon. It includes 7,780 square feet of street front commercial space. Part of the commercial space is presently leased to the Roxy Café. The remainder of the commercial space has been vacant since September 2008. This litigation relates only to The Fairfield's residential component.

(2)    The Fairfield was owned from October 1983 to January 2001 by the Fairfield Group, a for-profit entity. During this period, the Fairfield Group entered into a Housing Assistance Payments contract with the Housing Authority of Portland (HAP). HAP in turn was under contract with the federal Department of Housing and Urban Development (HUD) to provide assistance payments for eligible parties pursuant to 42 USC Ch 8, section 1437f, commonly known as the HUD section 8 program. HAP is a public corporation. These contracts concern only The Fairfield's residential component. The commercial space is not part of the section 8 program.

(3)    Under the Fairfield Group-HAP contract, the Fairfield Group was required to meet various facility operating and tenant leasing standards. Although the Fairfield Group and the property's residential component continuously qualified under the section 8 program and was so certified by HAP, the Fairfield Group neither sought, nor was the residential component granted, any tax exempt status during the Fairfield Group's ownership.

(4)    In January 2001, The Fairfield was acquired by the City of Portland, by and through Defendant Portland Development Commission (PDC) at the request of, and for the benefit of, the City of Portland. At the time of PDC's acquisition, the residential portion of the facility was designated by PDC to be used exclusively for preserving affordable housing in downtown Portland. PDC has determined to restrict the facility's residential use to such purpose and all occupants must qualify as low income occupants.

(5)    PDC is the designated urban renewal agency for the City of Portland, formed under Oregon Revised Statutes (ORS) chapter 457. PDC operates under the authority of a five member commission. PDC's responsibilities are not confined to urban renewal matters.

(6)    The Portland City Charter specifies three major areas of PDC responsibility under Charter section 15-103: Urban Renewal; Economic Development; and Affordable Housing. PDC is directed by the charter to "advance social equity in carrying out all its duties" and is to "create, maintain and promote a diverse, sustainable community in which *** quality housing *** opportunities are made available to all residents." In carrying out its responsibilities concerning affordable housing opportunities, PDC is to promote the creation and retention of multi-family housing.

(7)    Concurrent with PDC's acquisition, PDC assumed all of the Fairfield Group's obligations under the Fairfield Group-HAP contract. On this basis, HAP approved the assignment of the Housing Assistance Payments contract from the Fairfield Group to PDC.

(8)    Had PDC not assumed the obligations of the Fairfield Group-HAP contract and retained The Fairfield as a section 8 housing resource, PDC would not have been authorized to acquire the property, nor to operate it. The agreements pertaining to PDC's ownership and operation of The Fairfield were fully integrated with HAP's contract oversight and HAP's pre-existing control of the property as a section 8 housing resource. HAP's authority and control over The Fairfield remained unchanged following PDC's acquisition of the property.

(9)    Upon PDC's acquisition of The Fairfield, PDC retained Income Property Management (IPM), a for-profit company, to manage the property under a services agreement. For the 2001 and 2002 tax years, the property was managed by IPM. For the 2001 and 2002 tax years, The Fairfield's residential component was exempt from real property taxes. Plaintiff (the county) asserts that there was no basis for exemption of the property in those years and now claims the exemptions were placed on the roll in error.

PDC disagrees with this assertion. The county is unable to provide any documentation concerning the decision to grant the exemption in 2001-02.

(10)   The section 8 program limits the amount of rent that can be charged to occupants and sets conditions for how PDC may administer and manage The Fairfield. PDC is not permitted to make units available to the general public except in compliance with section 8 requirements. Other than one unit subject to a special rental arrangement, all of The Fairfield's units are designated as section 8 units, subject to the HAP contract. For purposes of calculating the HUD section 8 assistance payment and the "contract rent" that is legally chargeable to occupants at The Fairfield, no reimbursement for property taxes has been included. HAP administers the qualification of residents under the section 8 program and disburses section 8 subsidy payments.

(11)   The PDC-HAP section 8 contract was most recently renewed effective September 9, 2009. The Fairfield is designated as HUD Project No. 002 MB002-0001, HUD Contract No. OR 16-K002-002-1. The section 8 contract terms have not been materially changed from the original Fairfield Group-HAP contract, nor have the responsibilities of HAP and PDC concerning The Fairfield's operation.

(12)   From 2003 to February 28, 2006, The Fairfield was operated by Central City Concern under a "Master Lease and Management Agreement." It replaced IPM. Central City Concern is an Internal Revenue Code (IRC) section 501(c)(3) tax exempt organization. While Central City Concern "rented" the 82 SROs, it occupied none. Instead, it was required to limit all 82 SRO units to qualifying section 8 eligible residents (other than the exception unit identified above). No occupant had any position with Central City Concern, nor performed any services for Central City Concern at The Fairfield. All residents had (and have) signed occupancy agreements, limited to a specified SRO unit at The Fairfield. Residents are obligated to pay rent accordingly and The Fairfield receives a section 8 payment associated with each SRO unit. No occupant has contractual obligations under an occupancy agreement to pay real property taxes, directly or indirectly.

(13)    During the period of Central City Concern's management of The Fairfield, applications for exemption were made under ORS 307.540 to 307.548. The residential portion of the property was exempted under that statute for tax years up through 2005-06.

(14)    No applications for exemption were made under ORS 307.540 to 307.548 or any other statute for the 2009-10 tax year, nor for any tax year after 2005-06. The exemption remained in continuous effect.

(15)    On March 1, 2006, Central City Concern discontinued its management of The Fairfield. IPM was then renewed as manager under a flat fee, personal services contract. It is the current manager under a "qualified management contract" pursuant to the section 8 program.

(16)    All responsibility for property taxes has remained with PDC throughout PDC's ownership of the property. The actual use and operation of The Fairfield has not changed from the original PDC acquisition, irrespective of its operation by IPM or Central City Concern. IPM has no ownership or possessory right in the property. All real property interests, except for occupants' use of their SROs are held exclusively by PDC, subject to the HAP contract. No one associated with IPM occupies or leases an SRO unit at The Fairfield.

(17)    For the 2006, 2007, and 2008 tax years, The Fairfield was certified as exempt property on the annual roll. The county now asserts that there was no basis for exemption of the property for those years and they were placed on the roll in error. PDC disagrees with this assertion.

(18)    On September 21, 2009, the county determined that The Fairfield was not exempt from real property taxation for the 2009-10 tax year. On that date, the county corrected the roll to make the property taxable for the 2009-10 tax year on September 21, 2009. The 2009-10 tax roll was certified on October 9, 2009. PDC was not notified of the county's change in position until it received its 2009-10 tax bill in mid-October 2009. Up to that time, The Fairfield's residential component had been continuously exempt from property taxes during PDC's entire period of ownership.

(19)   PDC is required to prepare and submit to HAP an annual budget for The Fairfield's operation, including revenue, expenses, and any needed capital improvements. Based upon the continuously exempt nature of The Fairfield's residential component, PDC has never budgeted for any property tax expense nor has it been taken into account in setting the section 8 subsidy amounts by HAP and HUD.

(20)   Because of the special purpose housing function of The Fairfield, the property is available only for section 8 residential occupancy under its existing section 8 contracts with HAP and HUD. The property's use has been restricted by resolution by PDC and cannot be changed without action by the PDC commissioners.

(21)   PDC timely protested the asserted loss of The Fairfield's exempt status and timely filed its appeal of the county's change in taxable status for The Fairfield. The appeal relates solely to the residential portion of The Fairfield.

### III.   ISSUE

The issue is whether the property at issue is entitled to exemption from property taxation for the 2009 year under Oregon law.

### IV.   ANALYSIS

This order will address the various statutes that are identified by Defendant (taxpayer) as potential sources of exemption. Such a statutory source of exemption must exist if the property is to escape taxation. *See* ORS 307.030; ORS 308.210; ORS 308.232 (establishing that all property not exempt is to be assessed and taxed).[1]

A.   *ORS 307.090*

ORS 307.090(1) provides, in relevant part:

"Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of the several counties, cities, towns, school districts, irrigation districts, drainage districts, ports, water

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009.

districts, housing authorities and all other public or municipal corporations in this state, is exempt from taxation."

However, ORS 307.110(1) provides:

"Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable *** shall be subject to assessment and taxation for the assessed or specially assessed value thereof uniformly with real property of nonexempt ownerships."

Although taxpayer argues that the individuals residing in the property are not doing so under a lease or other interest less than fee simple, the court concludes that they are occupying space in the property under some form of lease or license sufficient to fit within the statutory provisions of ORS 307.110(1).

Taxpayer also argues that exemption should apply because the legislature did not intend ORS 307.110(1) to apply so as to cause taxation when provision of housing to low income occupants is involved. Unfortunately for taxpayer, the legislature specifically addressed the extent to which ORS 307.110(1) should not apply in such situations when it stated in ORS 307.110(3) as follows:

"Nothing contained in this section shall be construed as subjecting to assessment and taxation any publically owned property described in subsection (1) of this section that is:

"* * * * *

"(g)   Property of a housing authority created under ORS chapter 456 which is leased or rented to persons of lower income for housing pursuant to the public and governmental purposes of the housing authority. For purposes of this paragraph, 'persons of lower income' has the meaning given the phrase under ORS 456.055."

Taxpayer is not a housing authority created under ORS chapter 456 and therefore taxpayer's article fails. The court cannot expand the favorable provisions set forth by the legislature. The provisions of ORS 307.110(1) cause the property to be taxable.

B.  *ORS 307.092*

ORS 307.092 provides, in relevant part:

"(1)   As used in this section, 'property of a housing authority' includes, but is not limited to:

"(a)   Property that is held under lease or lease purchase agreement by the housing authority; and

"(b)   Property of a partnership, nonprofit corporation or limited liability company for which the housing authority is a general partner, limited partner, director, member, manager or general manager, if the property is leased or rented to persons of lower income for housing purposes.

"(2)   Except as provided in subsection (3) of this section, the property of a housing authority is declared to be public property used for essential public and governmental purposes and such property and an authority shall be exempt from all taxes * * *."

Taxpayer is not a housing authority within the meaning of the statute. Therefore, paragraph (1)(a) of ORS 307.092 does not apply to provide relief to taxpayer.

Taxpayer argues that because the Housing Authority of Portland (HAP) provides oversight of the operation of the property on behalf of the federal Department of Housing and Urban Development (HUD), the property in question here is property described in paragraph (1)(b) of ORS 307.092. However, for that paragraph of the statute to apply, taxpayer would have to be one of the specified types of entities (partnership, nonprofit corporation, or limited liability company) and HAP would have to bear the particular statutorily defined relationship (general partner, limited partner, etc.) to that entity.

The facts are that taxpayer is not the type of entity described in the statute and HAP bears none of the relationships to taxpayer required by the statute. Even if HAP has some role with the property, it does not have one of the statutorily described roles with respect to taxpayer.

Taxpayer observes that the particular descriptions in ORS 307.092(1) are some but not all definitions of "property of a housing authority." That is true. However the

court cannot undertake to supply other definitions in this instance. The court concludes that the provisions of subsection (1) were added to describe either ownership by a housing authority of less than a fee interest (a lease interest or interest of a lessee with an option to purchase) or ownership by an affiliate of a housing authority. Neither of these situations is present here.

The court concludes that ORS 307.092 offers no help to taxpayer.

## V.    CONCLUSION

The statutes to which taxpayer points do not, by their express terms, apply to the property in question under its current ownership. Taxpayer argues that all the policy purposes of the various statutory provisions relating to housing for low income persons are satisfied and therefore the existing statutes should be construed so as to slightly extend their reach to this set of facts. The court is not authorized to make the determination that statutes that do not fit the facts should be extended to apply to the property in question. It is for the legislature to determine if statutes should be amended or added so as to provide the relief which taxpayer seeks. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is granted and the motion of Defendant is denied.